UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KENNAN SIMMONS, | ) |
| Plaintiff | ) |
| vs. | ) CAUSE NO. 3:06-CV-118 RM |
| FRANK CANARECCI, Sheriff, *et al.*, | ) |
| Defendants | ) |

## OPINION AND ORDER

Kennan Simmons, a prisoner confined at the Westville Correctional Facility, filed a complaint under 42 U.S.C. § 1983 alleging that St. Joseph County Sheriff Frank Canarecci, Jail Commander Julie Lawson, and Classification Supervisor Belinda Schroeder operated several racially segregated housing units, and that other units were only marginally integrated. In his more definite statement, he asserts that he was housed in racially segregated units while he was at the St. Joseph County Jail. The court screened the complaint pursuant to 28 U.S.C. § 1915A, allowed Mr. Simmons to proceed against the defendants on his Fourteenth Amendment equal protection claim that they racially segregated him while he was housed at the St. Joseph County Jail, and dismissed all other claims.

The defendants have moved for summary judgment pursuant to FED R. CIV. P. 56; Mr. Simmons has responded. For the reasons that follow, the court grants the defendants' summary judgment motion.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the

> moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. Celotex Corp., 477 U.S. at 324.
> . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Ranochakio Corp., 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996).

A court must analyze all racial classifications imposed by government under the strict scrutiny standard. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227 (1995). Under this standard, government officials have the burden of proving that racial classifications "are narrowly tailored measures that further compelling governmental interests." Id. at 227. Prison or jail officials who racially segregate prisoners must justify their actions under the strict scrutiny standard. Johnson v. California, 543 U.S. 449 (2005).

The defendants submit affidavits, in which they deny intentionally segregating inmates by race. According to the defendants' affidavits there was no policy or practice of segregating prisoners by race at the St. Joseph County Jail, and they established no racially segregated housing units at the jail.

The defendants state that St. Joseph County Jail officials take a number of factors into consideration when assigning prisoners to housing units — including

the seriousness of the charges against them, history of attempted escape or assaultive behavior, past criminal convictions, and several other factors. The defendants state that they do not take race into account. Sheriff Canarecci and Warden Lawson state in their affidavits that they were not personally involved in classifying Mr. Simmons or assigning him to a housing unit.

Belinda Schroeder, the jail's classification supervisor, states in her affidavit that she "made or approved all of the custody classification level determinations and cell assignments for Kennan Simmons." (Docket #35-3 at p. 1). She further states that the jail has no policy or practice of racial discrimination and that she has never discriminated against Mr. Simmons because of his race. (Docket #35-3 at p. 8).

Mr. Simmons was at the St. Joseph County Jail on two occasions. He was arrested on June 3, 2005, and charged with auto theft. He remained at the jail until July 1, 2005. Mr. Simmons was arrested again on December 16, 2005, and charged with robbery. He remained at the jail until April 4, 2006, when he was transferred to the Indiana Department of Correction.

The defendants' submissions establish that on both occasions when Mr. Simmons was confined at the St. Joseph County Jail, black males formed a substantial majority of the jail population. In June and July of 2005, Mr. Simmons was placed in a Level 5 medium custody unit because he was charged with a non-assaultive felony and he had no prior history of convictions or behavioral problems at the jail. Defendant Schroeder states in her affidavit that the Level 5 unit Mr. Simmons was housed in "contained black inmates and those of other races." (Docket #35-3 at p. 4).

3

When Mr. Simmons returned to the jail in December 2005, he was initially placed in the medical unit because he was being treated for drug abuse and depression and was being seen by a mental health professional from Madison Center. He was also placed on suicide watch for a period of time. (Docket #35-3 at pp. 5-6). When Mr. Simmons was assigned to general population, he was classified to a Level 3 high/medium security cell because he was charged with an assaultive felony. Mr. Simmons also spent time in disciplinary segregation because of misbehavior. Defendant Schroeder states that Mr. Simmons was housed in racially mixed units most of the time he was at the jail, but that between January 17 and March 3, 2006, he was housed in a unit that "was populated solely by black inmates who had the same security level as Mr. Simmons." (Docket #35-3 at p. 7).

Mr. Simmons responded to the defendants' motion for summary judgment, but his response consists solely of legal arguments. He submitted no affidavits or other admissible evidence contesting the facts set forth in the defendants' submissions.

The defendants' sworn testimony establishes that they did not have a policy or a practice of racially segregating inmates at the jail. Without a policy or practice there can be no official capacity damage claims. <u>Monnell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978).

Defendants Canarreci and Lawson's affidavits establish that they had no personal involvement in Mr. Simmons's housing assignments. Section 1983 creates a cause of action for damages based on personal liability. A person cannot be held liable under § 1983 unless the person was personally involved in the

4

alleged wrongdoing. Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996); Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993).

Finally, the defendants concede that because a substantial majority of the jail population consists of black males, some units—at least part of the time—have all black populations. Defendant Schroeder states in her affidavit that she did not intentionally place Mr. Simmons in a racially segregated unit and that the brief period of time he spent in such a unit resulted from the number of black male inmates in the same security level as Mr. Simmons.

Prison or jail officials may not intentionally racially segregate prisoners without justifying their actions under the strict scrutiny standard. Johnson v. California, 543 U.S. 449 (2005). But that a small prison or jail housing unit may be for a period of time entirely populated by members of one race based on application of race-neutral classification factors does not violate prisoners' federally protected rights.

The defendants' summary judgment motion pointed out facts and law that would keep Mr. Simmons from succeeding on his claim that they intentionally placed him in racially segregated housing units while he was housed at the jail. The defendants also provided Mr. Simmons with a notice that informed him of the method and importance of responding to their summary judgment motion, *see* Timms v. Frank, 953 F.2d 281, 285-86 (7th Cir.); Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982). (Docket #77). Despite the warning contained in the defendants'

5

notice, Mr. Simmons did not submit sworn testimony or other admissible evidence contesting the defendants' submissions.

Because the defendants met their initial obligation under Fed. R. Civ. P. 56, the burden fell upon Mr. Simmons to come forth with evidence sufficient, if viewed as fully in his favor as reasonable, would allow a factfinder to decide in his favor the questions of whether the defendants maintained a policy or practice of segregating inmates at the St. Joseph County Jail by race and whether they intentionally placed him in a racially segregated housing unit. When a non-moving party does not make such a showing, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 884 (1990), citing Celotex Corp. v. Catrett, 477 U.S. at 323.

Because Mr. Simmons has not submitted admissible evidence contesting the defendants' request for summary judgment, he has not met his burden of coming forth with evidence sufficient which, if viewed reasonably in his favor, would allow a factfinder to decide in his favor the questions of whether the defendants maintained a policy or practice of segregating inmates at the St. Joseph County Jail by race or whether they intentionally placed him in a racially segregated housing unit.

That the majority of inmates at the jail are black men ensures that most male housing units will be predominately black. Moreover, if officials do not take race into account—and classify inmates only on the criteria set forth in their submissions—it is inevitable that some housing units may be entirely of one race

part of the time. The only way to ensure that jail housing units will be racially balanced is to affirmatively take race into account in making housing assignments —which the Fourteenth Amendment does not require.

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment (docket #34), and DIRECTS the clerk to enter judgment in favor of the defendants and against the plaintiff.

SO ORDERED.

ENTERED: August  29 , 2007

                                         /s/ Robert L. Miller, Jr.
                                         Chief Judge
                                         United States District Court